UNITED STATES of America,

v.

Jessica PATTERSON, Defendant.

No. 02–CR–455 (JBW).

United States District Court,
E.D. New York.

Sept. 9, 2003.

Scott B. Klugman, United States Attorney's Office, Brooklyn, NY, for Plaintiff.

Jonathan Marks, Law Offices of Jonathan Marks, P.C., New York City, for Defendant.

## MEMORANDUM & ORDER

WEINSTEIN, Senior District Judge.

### I. *Introduction*

On September 3, 2003, this court sentenced defendant Jessica Patterson to five years' probation, reflecting a thirteen-point downward departure for aberrant behavior that was unopposed by the government. This Memorandum and Order sets forth the basis for the departure.

### II. *Facts*

#### A. The Crime

In the spring of 2001, then-seventeen-year-old Jessica Patterson met Delroy Lindo and the two became friends. *See* Presentence Investigation Report ("PSR"), at ¶ 11. In October, Lindo asked Patterson if she were interested in vacationing in Antigua. He told her that he would pay for the trip and $2,500 to import cocaine into the United States upon her return. Prior to this conversation, Patterson was not aware that Lindo was involved in narcotics distribution. Patterson refused the offer.

Patterson communicated the offer to a friend, Tanya Liburd. She made arrangements for Liburd to meet Lindo at Pennsylvania Station. After introducing them, Patterson left. She was not paid for introducing Liburd and Lindo. She had no contact with Lindo after November 2001.

In late October 2001, Liburd went to Antigua. Upon her return to the United States, she was detained and searched. Agents found several packets taped to her

body containing a total of 4,056 grams of cocaine.

Based upon information from Liburd, Patterson was arrested in February 2002 and charged with conspiracy to import cocaine into the United States. *See* 21 U.S.C. §§ 963, 952(a), 960(a)(1), 960(b)(3). After being arrested, Patterson cooperated fully with the authorities:

> [W]hen she was first approached by Customs agents, she was immediately truthful about her participation and her cooperation in conjunction with information from other cooperating defendants provided us enough information to obtain an arrest warrant for [the ringleader] and it was through no fault of her own, we simply could not locate him. We know he exists based on what other people have told us. We believe she was truthful about it, we just couldn't find the person.

Assistant U.S. Attorney Nicholas Bourtin, September 3 Sentencing Hearing, at 16.

### B. Patterson's History

Patterson is described by her parents and sister as a good-hearted if naive young adult. When she was twelve, her mother suffered from kidney failure. The mother states that Patterson has helped out a great deal since she became ill. Patterson's supportive father, who was present at the sentencing, is a bus driver.

Patterson completed the Job Corps program in the fall of 2001 and received certificates in a Recovery and Recycling Program and in a Mechanic's Program. She also obtained a GED through the Job Corps program. She has been steadily employed by Command Bus since November 2001. Initially she worked as an interior bus cleaner. She was recently promoted to mechanic, repairing bus bodies. She obviously loves her work and is strongly supported by her employer.

Patterson has no prior convictions. She admits to having smoked marijuana at some time. She has not done so since March 2001.

### III. *Analysis*

The PSR recommended an offense level of 23. This was calculated as follows:

| | |
|---|---|
| Base offense level (*see* U.S.S.G. § 2D1.1(a)(3)): | 30 |
| Safety valve (*see* U.S.S.G. §§ 5C1.2, 2D1.1(b)(6)): | – 2 |
| Minor participant (*see* U.S.S.G. § 3B1.2(b)): | – 2 |
| Acceptance of responsibility (*see* U.S.S.G. §§ 3E1.1(a), (b)(2)): | – 3 |

At sentencing, defense counsel argued that Patterson's role was minimal rather than minor, reducing the offense level by an additional two points. The government agreed with defense counsel's claim. Consequently, the adjusted offense level was 21. With a criminal history category of I, this yields a guideline range of 37 to 46 months.

Defense counsel moved for a downward departure based on aberrant behavior. *See* U.S.S.G. § 5K2.20. The government did not oppose the motion.

A downward departure for aberrant behavior is permitted only if: (1) the offense did not involve serious bodily injury or death; (2) the defendant did not discharge a firearm or otherwise use a firearm or dangerous weapon; (3) the offense is not a serious drug trafficking offense; (4) the defendant does not have more than one criminal history point; and (5) the defendant does not have a prior federal or state felony conviction. *See* U.S.S.G. § 5K2.20. Patterson meets all five criteria. The instant offense is not a "serious drug trafficking offense" for purposes of section 5K2.20 of the Sentencing Guidelines because she meets the safety valve criteria of section 5C1.2 and is not subject to a mandatory minimum sentence.

Aberrant behavior is defined in the Sentencing Guidelines as a single criminal occurrence or transaction that (1) was committed without significant planning; (2)

was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. *See* Application Note 1, U.S.S.G. § 5K2.20.

In the instant case, the criminal act was spontaneous and involved no planning. After refusing any role in Lindo's drug importation scheme, Patterson put her friends Lindo and Liburd in touch with one another. She expected and received no payment for arranging for her friend to meet the man she had rejected. Obviously, the two young females had discussed the event and the introduction was at Lindo's, not defendant's, behest.

Patterson's role in the drug conspiracy was of limited duration—after introducing Liburd to Lindo, her participation in the scheme ended. Other than this one incident, Patterson has been a hard-working young woman and a supportive daughter.

Application Note 2 sets forth factors the sentencing court should consider in deciding whether to downwardly depart when an aberrant behavior sentence is being contemplated:

> [T]he court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.

In Patterson's case, each factor merits downward departure.

### A. Mental and Emotional Conditions

Patterson's demeanor, her father's testimony at sentencing, and the information in the PSR indicate that she is mentally and emotionally stable. Her mental and emotional condition does not warrant departure.

### B. Employment Record

After dropping out of high school, Patterson completed the Job Corps program and received her GED. She has steadily held a job at Command Bus Company since she began working shortly after her eighteenth birthday. She was recently promoted to bus mechanic. Her work is good and she enjoys doing it.

### C. Record of Prior Good Works

The PSR indicates that Patterson is a concerned daughter and sister. When her mother suffered from kidney failure in 1995, she cared for her while her father worked.

### D. Motivation for Committing the Instant Offense

Patterson was apparently motivated solely by her desire to do a favor for her friend, Lindo. She was not paid, nor did she receive any other form of remuneration.

### E. Efforts to Mitigate the Effects of the Offense

Patterson has cooperated fully with the government. Information given by Patterson and others led to the issuance of an arrest warrant for the organizer of the importation conspiracy. Through no fault of her own, he was never apprehended.

## IV. *Conclusion*

Patterson's involvement in the instant offense was aberrant. A downward departure is warranted. The court finds that a thirteen-point downward departure is appropriate. Patterson is sentenced to five years' strictly supervised probation in addition to the other conditions stated orally at the sentencing hearing.

SO ORDERED.